The Honorable Tommy G. Roebuck State Representative Post Office Box 639 Arkadelphia, AR 71923-0639
Dear Representative Roebuck:
I am writing in response to a question you have posed on behalf of the sheriff of Nevada County. The sheriff serves as a director of the South Central Drug Task Force ("SCDTF"), which serves a number of counties and cities in south-central Arkansas. He has asked for my opinion on the following question:
 If because of legislative action the SCDTF was suddenly without much warning shut down, disband[ed] or if an officer with the SCDTF suddenly decided for whatever reason to quit the SCDTF and at such time he had 300 comp time hours and at such time there was not enough money in the SCDTF budget to make full payment of said comp hours could each county, municipality or board member individually be held liable for payment?
RESPONSE
Your question is based on a possibly unwarranted assumption that compensation time not used at the time of an employee's termination gives rise under the Fair Labor Standards Act to a claim for monetary compensation. However, even if the facts support this assumption, so long as the employee was hired pursuant to the grant authorization referenced at A.C.A. § 16-21-147(c), as appears to be the case, specified grant revenues should constitute the sole source of employee compensation. Absent some misappropriation of grant funds that might amount to a tort or a breach of fiduciary duty, I do not believe the referenced entities and individuals would face potential liability to the employee.
Although your request contains no information regarding the organization of the SCDTF, the Arkansas Court of Appeals offered the following summary of its operational structure in affirming an SCDTF employee's claim for state workers' compensation benefits:
 The program is directed by the prosecutor's office for the Eighth Judicial District, and Mr. Ray's paychecks are drawn against the prosecutor's office.
 Brent Haltom, Prosecuting Attorney for the Eighth Judicial District, also testified. He stated that the program is funded by grant money, which he receives from the state. Because Mr. Haltom is a state official, the state matches certain funds that are provided by the federal government through a federal grant program. According to Mr. Haltom, the funds appropriated for 1993 included $228,204.00 from the federal government and $76,068.00 from the State of Arkansas. Mr. Haltom did not use any of this money to purchase workers' compensation insurance for the agents of SCDTF because he considered the agents to be state employees covered by PECD. He based this belief, in part, on the fact that Mr. Ray and other agents were provided with health and retirement benefits by the State of Arkansas.
 Sandra Rodgers, fiscal officer for SCDTF, testified that she sends in a request and receives a check directly from the state. According to Ms. Rodgers, all of the federal and state funds appropriated for the program are deposited by the Department of Finance and Administration into the State Treasury. The money is then disbursed upon request for operating expenses and salaries for the agents.
South Central Arkansas Drug Task Force et al. v. Ray, 56 Ark. App. 30,31-32, 937 S.W.2d 682 (1997); see also A.C.A. § 16-21-147(c) (Repl. 1999) (authorizing prosecuting attorneys "to appoint deputy prosecuting attorneys and other employees at such salaries as are authorized in the grant awards from the Department of Finance and Administration drug law enforcement program, Anti-Drug Abuse Act of 1986, as amended, or its successor"). For purposes of my analysis, I will assume that the organization of the SCDTF remains essentially as described in this passage.
At issue initially is whether any provision of federal or state statutory law requires the payment of overtime to a drug task force employee under any circumstances. I believe the answer to this question is clearly "yes." With certain inapplicable exceptions, the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., applies to "any individual employed by a State, political subdivision of a State, or an interstate governmental agency. . . ." 29 U.S.C. § 203(e)(2)(C). This category would appear to include drug task force employees. Pursuant to29 U.S.C. § 207(a)(1), any covered employee working more than forty hours in a week is entitled to overtime payment "at a rate not less than one and one-half times the regular rate at which he is employed."
However, FLSA further provides that under certain circumstances an employer can offer "compensatory time" in lieu of overtime. Specifically, 29 U.S.C. § 207(o) provides in pertinent part:
 (1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.
 (2) A public agency may provide compensatory time under paragraph (1) only —
(A) pursuant to —
 (i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or
 (ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and
 (B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).
 In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection.
 (3)(A) If the work of an employee for which compensatory time may be provided included work in a public safety activity, an emergency response activity, or a seasonal activity, the employee engaged in such work may accrue not more than 480 hours of compensatory time for hours worked after April 15, 1986. If such work was any other work, the employee engaged in such work may accrue not more than 240 hours of compensatory time for hours worked after April 15, 1986. Any such employee who, after April 15, 1986, has accrued 480 or 240 hours, as the case may be, of compensatory time off shall, for additional overtime hours of work, be paid overtime compensation.
29 U.S.C. § 207(o)(1)-(3). See also 29 C.F.R. § 553.20 et seq. In essence this statute affords the parties an opportunity to negotiate a contract provision substituting compensatory time off for monetary overtime up to the caps on accrued hours set forth 29 U.S.C. 207(o)(3)(A).
Given your representation that the employee in your hypothetical "had 300 comp time hours," I will assume that the SCDTF, either by formal agreement or by practice in accordance with 29 U.S.C. § 207(o)(2)(A), authorized the accrual of compensation time. If this assumption is correct, because a drug task force employee is clearly engaged in "a public safety activity," I believe he would be entitled to all 300 hours pursuant to 29 U.S.C. § 207(o)(3)(A), which caps the entitlement for such a worker at 480 hours.
With respect to your specific question, no provision of FLSA provides that unused compensation time is necessarily reimbursable as overtime upon an employee's termination or resignation. This is not to say that a drug task force contract might not contain a provision requiring monetary compensation for unused compensation time upon an employee's resignation or the dissolution of the drug task force. See, e.g., City ofFayetteville v. Bibb, 30 Ark. App. 31 (1989) (reviewing evidence regarding whether a city employee's contract provided for payment for unused compensation time upon her termination). However, as the court noted in Bibb: "`Allowance of compensatory time off for extra hours worked does not necessarily authorize the payment of money in lieu thereof.'" 30 Ark. App. at 34, quoting Koudelka v. Village of Woodridge,413 N.E.2d 1381 (Ill.App. 1980), in turn citing 4 McQuillan, MunicipalCorporations, 12.194(a) (3d ed. 1979). I am not a finder of fact, and I am neither authorized nor equipped to determine whether the SCDTF might by contract be subject to any monetary obligation if an employee retires or is terminated without having used all his accrued compensation time.
The question of who might ultimately be responsible for paying an entitled employee for unused compensation time is likewise one of fact. Judging from the description set forth in Ray, the SCDTF's operations are funded exclusively through state and federal grants, as A.C.A. §16-21-147(c) appears to anticipate. See Ark. Op. Att'y Gen. No. 90-216
(discussing such funding for the Seventh Judicial District Drug Task Force). Assuming this to be correct, logic suggests that the SCDTF would hire employees only subject to the condition that their salaries be paid solely from available grant funds. However, I cannot state as a matter of incontrovertible fact that any or all SCDTF employees were hired subject to this restriction. In theory the various entities served by the SCDTF might commit to contribute to its operations. However, absent any such commitment and absent any affirmative misconduct in the disposition of grant revenues, I do not believe either SCDTF board members or the individual entities the SCDTF serves could be held liable to an employee if available grant funds proved insufficient to pay the employee for unused compensation time deemed compensable as overtime.
Finally, I do not believe your question implicates state law as set forth in the Uniform Attendance and Leave Policy Act ("UALPA"), A.C.A. §21-4-201 et seq.[1] Subsection 21-4-203(8) of the Code (Supp. 2001) defines the term "employee" as meaning "a person regularly appointed or employed in a position of state service by a state agency, as defined in subdivision (1) of this section, for which he or she is compensated on a full-time basis."[2] In Ark. Op. Att'y Gen. No. 2001-053, I opined that this definition did not apply to employees of the Seventh Judicial District Drug Task Force to render them eligible to accrue leave time. In support of this conclusion, I offered the following analysis:
 In my opinion, this definition encompasses such regular positions as are fixed by law in accordance with Article 16, Section 4 of the Arkansas Constitution. Article 16, Section 4 states in relevant part that "the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law." The State Regular Salary Procedures and Restrictions Act refers to these positions as "authorized regular salary positions." A.C.A. § 21-5-101
(Repl. 1996). The General Accounting and Budgetary Procedures Law offers further insight wherein it establishes a subclassification entitled "Regular Salaries" which applies to "all salaries and compensation . . . for state employees where the number of employees and maximum amounts of compensation are statutorily authorized as provided by the Arkansas Constitution, Article 16, § 4."
 The definition of "employee" in the Uniform Attendance and Leave Policy Act may, in my opinion, reasonably be construed in light of these other provisions governing state-authorized positions. A similar definition of "employee" appears in the Uniform Classification and Compensation Act (see A.C.A. § 21-5-203(6) (Supp. 1999)). I believe it is reasonable to assume that the General Assembly intends for the definition of "employee" under these uniform acts to be construed consistently, particularly in light of the goal to "ensure a uniform system of personnel administration within state government." A.C.A. § 21-5-207(a)(15) (part of the Uniform Classification and Compensation Act establishing duties of the OPM). The Regular Salary Procedures and Restrictions Act, supra, is then informative in revealing that the Uniform Classification and Compensation Act applies to "authorized regular salary positions." See A.C.A. § 21-5-101(b)(1).
 Construing these definitions together, therefore, and in light of the Regular Salary Procedures and Restrictions Act, I conclude that an "employee" under the Uniform Attendance and Leave Policy Act is a person serving in a regular salary position that was authorized by the General Assembly for the benefit of the agency in accordance with Ark. Const. art. 16, § 4. Based upon the facts of which I am aware surrounding the 7th Judicial District Drug Task Force, persons employed by the Prosecuting Attorney to work for that DTF do not fall within this category. I base this conclusion upon the fact that these persons held positions which, according to my understanding, were authorized in the grant award and funded at salaries set out in the grant. According to my research, there was no appropriation act or statute fixing the number and salaries of these employees. Rather, the position and rates appeared on the grant application of the DTF as the subgrantee.
(Footnotes omitted.) I continue to subscribe to this interpretation of the statute, leading me to conclude that SCDTF employees could not be considered "employees" subject to the provisions of the UALPA.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Like its federal counterpart, UALPA addresses the accrual of "compensatory time," which it defines as "time off in lieu of payment for overtime hours." A.C.A. § 21-4-201(6).
[2] I am uncertain why the statute references "subdivision (1)," which defines the terms "agency head" and "agency director" as meaning "the executive head of all agencies, departments, boards, commissions, bureaus, councils, or other agencies of the state." With certain inapplicable exceptions, subdivision (11) of the statute defines "state agencies" as comprising "all agencies, departments, boards, commissions, bureaus, councils, state-supported institution of higher learning, or other agencies. . . ."